## AMOS THOEN v. LANESBORO SCHOOL DISTRICT NO. 229 AND ANOTHER.

209 N. W. 2d 924.

May 25, 1973—No. 43526.

*Peterson & Challeen, Carroll, Cronan, Roth & Austin,* and *Thomas A. Foster,* for appellant.

*Fitzgerald, Fitzgerald & Crandall, Patrick W. Fitzgerald,* and *William Crandall,* for respondents.

Heard before Knutson, C. J., and Rogosheske, Peterson, and MacLaughlin, JJ.

PER CURIAM.

Plaintiff, Amos Thoen, appeals from the denial of a new trial in a negligence action where the jury found that defendant Lanesboro School District No. 229, through its employee, defendant LaMoine Hatton, was 50 percent negligent and that plaintiff was also 50 percent negligent. We reverse.

On April 5, 1968, plaintiff was struck by a school bus owned by defendant school district and driven by defendant Hatton. The accident occurred within the village limits of Lanesboro on State Highway No. 250 near a stone quarry while plaintiff and a coworker were installing a power pole near the road. Although

their employer, Lanesboro Public Utility Commission, furnished "hard hats," neither plaintiff nor his coworker was wearing one.

Pursuant to the jury's special verdict that plaintiff's damages were $153,000 but that both plaintiff and defendant Hatton were each 50 percent negligent, judgment was ordered in favor of defendants. Plaintiff moved for an order setting aside certain answers in the special verdict and substituting other answers or for a new trial, contending, among other things, that (a) the trial court failed to adequately instruct the jury concerning defense counsel's allegedly prejudicial argument to the jury in which counsel said that plaintiff's failure to wear a hard hat constituted negligence, and (b) the court improperly failed to instruct that the speed limit in the area of the accident was 30 miles an hour.

1. Although plaintiff's employer supplied him with a hard hat, plaintiff was not wearing one at the time of the accident. Plaintiff suffered serious head injuries in the accident. Defendants' counsel argued to the jury:

"First of all, we have got the matter of the equipment that Amos Thoen had on the day the accident took place. The evidence and testimony is absolutely, positively, clear. On the day of April the 5th, 1968, these men have by way of equipment hard hats. Would we be before this jury discussing a case of this nature, this type of injury, if this man had worn that hat? I don't believe we would have. What is the reason why equipment of this nature is used? Pure, plain and simple safety. Wasn't it interesting to note that the men working out there at Torgerson's Sand and Gravel had the hard hat equipment on? LaMoine has testified that when Amos was struck, he had his right hand out. The shovel hit the front part of the bus, then his right side went up over the axel [sic] area when he walked into the left front fender and then the right side of his head hit the left turn light. Dr. Rotton testified that there was a fracture located in the right side of the skull. What would have happened if that one simple safety precaution had been taken?

"Now, these and this I feel are a very definite element in determining and assessing responsibility and fault of the occurrence of this accident.

\* \* \* \* \*

"\* \* \* One of the principal questions, of course, is was the plaintiff, Amos Thoen, negligent in the manner in which he conducted himself? \* \* \* *Certainly failure to wear a hard hat is negligence.*" (Italics supplied.)

Plaintiff objected to the hard-hat argument and requested a correcting instruction. The trial court agreed to instruct the jury that there is no requirement under the law that a pedestrian wear a hard hat.

The court instructed the jury as follows:

"\* \* \* Now, these two duties—to keep a reasonable lookout and to keep your vehicle under control—whether or not those duties have been violated depends upon the risks of the situation, the dangers known or reasonably to have been foreseen and all of the then existing circumstances.

"Now, in this area I want to mention to you that the clothing and head covering question has come up. There is no law in the State of Minnesota which requires a pedestrian or a person who is working or a person walking along or on a public highway to wear any particular type of clothing, *nor to wear a hard hat* as the term is sometimes used in certain construction trades and other trades. The question of clothing and of head covering is one element in all the circumstances which you may consider in deciding whether the *conduct of the parties* constitutes negligence under the circumstances then prevailing at the time of the collision and the injury." (Italics supplied.)

The instruction is contradictory. The trial court said that no law required plaintiff to wear a hard hat but then implied that failure to wear a hard hat is one of the circumstances which can be considered in deciding whether the "conduct of the parties" constitutes negligence.

Since plaintiff's failure to wear a hard hat did not expose him to any foreseeable risk of being struck by a school bus, defendants' argument to the jury that failure to wear a hard hat constituted negligence was improper. See, Denson v. McDonald, 144 Minn. 252, 175 N. W. 108 (1919).

The jury found that plaintiff suffered $153,000 damages and that both plaintiff and defendants were 50 percent negligent. Under Minnesota's comparative negligence law, Minn. St. 604.01, a difference of one percentage point in the jury's allocation of negligence (i.e., plaintiff, 49 percent negligent; defendant, 51 percent negligent) would result in plaintiff's recovering about $78,000 rather than nothing. Thus, even if the improper argument had only a small effect on the jury, plaintiff could have been seriously prejudiced.

The trial court's instruction which attempted to correct the improper argument was ambiguous and unclear and could have left the jury confused as to what weight should be put on the fact that plaintiff wore no hard hat. We therefore reverse and remand for a new trial.

2. Plaintiff contends that the trial court improperly refused to instruct the jury that § 169.14, subd. 2, placed a 30-miles-an-hour speed limit at the accident scene. Section 169.14, subd. 2, provides in part:

"Where no special hazard exists, the following speeds shall be lawful, but any speeds in excess of such limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful; except that the speed limit within any municipality shall be a maximum limit and any speed in excess thereof shall be unlawful:

(1) 30 miles per hour in an urban district."

For purposes of c. 169, "urban district" is defined as—

"* * * the territory contiguous to and including any street which is built up with structures devoted to business, industry,

or dwelling houses situated at intervals of less than 100 feet for a distance of a quarter of a mile or more." § 169.01, subd. 59.

Plaintiff points to no evidence that the scene of the accident fits into the statutory definition of "urban district." The evidence does not show that there were any structures near the accident but only that the accident occurred near a stone quarry. Aerial pictures of the area support defendants' contention that this was not an "urban district." A refusal to give a requested instruction is not error where the evidence will not sustain a finding of facts essential to make the instruction applicable. Meagher v. Kavli, 256 Minn. 54, 97 N. W. 2d 370 (1959).

Reversed and remanded.